UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

|  |  |
|---|---|
| In re ) | |
| ) | Chapter 11 |
| 220 FERRY STREET, LLC, ) | Case No. 07-14303-RS |
| ) | |
| Debtor. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION OF INVESTMENT REALTY FUNDING, INC. FOR (I) IMMEDIATE, TEMPORARY ORDER STAYING ORDER AUTHORIZING POSTPETITION FINANCING, AND FURTHER ORDER STAYING ORDER AUTHORIZING POSTPETITION FINANCING PENDING APPEAL, OR (II) ALTERNATIVELY, TEMPORARY ORDER STAYING ORDER AUTHORIZING POSTPETITION FINANCING PENDING DISTRICT COURT DETERMINATION OF EMERGENCY MOTION FOR STAY PENDING APPEAL**

To the Honorable Robert Somma, United States Bankruptcy Judge:

Investment Realty Funding, Inc. (the "Holder"), successor in interest to Merope Deluca, Trustee of Investors Realty Trust (the "Trust") and secured creditor of 220 Ferry Street, LLC (the "Debtor"), hereby submits this memorandum of law in support of the *Emergency Motion of Investment Realty Funding, Inc. for (I) Immediate, Temporary Order Staying Order Authorizing Postpetition Financing, and Further Order Staying Order Authorizing Postpetition Financing Pending Appeal, or (II) Alternatively, Temporary Order Staying Order Authorizing Postpetition Financing Pending District Court Determination of Emergency Motion for Stay Pending Appeal* (the "Motion"). As set forth in the Motion, the Holder moves, pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for (i) an immediate, temporary order, pending this Court's determination of the Motion, staying the order entered by this Court on September 26, 2007 (the "DIP Borrowing Order") allowing the *Debtor's Motion for an Order Authorizing Postpetition Financing on a First Priority Secured Basis* (the "DIP

188912_1.DOC
JS#188912v1

Borrowing Motion"), (ii) a further order staying the DIP Borrowing Order pending an appeal therefrom to the United States District Court for the District of Massachusetts (the "District Court"), or (iii) in the alternative, if the Court denies the foregoing relief, a brief stay of the DIP Borrowing Order to permit the Holder to seek a further stay on an emergency basis from the District Court pending an appeal.

For the reasons stated herein, this Court should grant the relief requested in the Motion.[1]

### I. Relevant Background and Procedural History

#### A. The Prepetition Transactions

On or about October 28, 2005, Richard P. Duffee ("Duffee"), individually and as trustee of the 220 Ferry Street Realty Trust, among others (the "Affiliates"), executed and delivered to the Trust a *Promissory Note* in the principal amount of $1 Million (the "Note"), which funds the Trust advanced to fund the development of certain unimproved real property located at 220 Ferry Street, Marshfield, Massachusetts (the "Property"). Pursuant to the Note, the Holder is entitled to interest on the amounts advanced, payable at the rate of sixteen and one-half percent (16.5%) per annum. The Note states the Affiliates were to make thirty-six (36) installment payments of interest only, beginning on December 1, 2005, with the entire remaining balance due under the Note becoming due in thirty-six (36) months. In addition to providing for the payment to the Holder of other charges, expenses, and costs of collection, the Note also states that in the event the Affiliates are ever more than thirty (30) days late in making any payments due, the Holder is entitled to default interest, payable at the rate of nineteen and one-half percent (19.5%). As of

---

[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The predicate for the relief requested herein is Bankruptcy Rule 8005. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

July 11, 2007 (the "Petition Date"), the Affiliates owed the Holder $1,143,148.21 under the Note, exclusive other certain charges, expenses, and costs of collection.

To secure the full and timely repayment of the obligations evidenced by the Note, the Affiliates executed and delivered to the Trust, *inter alia*, a *Mortgage and Security Agreement* dated October 25, 2005, recorded in the Registry of Deeds for Plymouth County at Book No. 31642, Page No. 69, *et seq.* (the "Mortgage"), pursuant to which the Affiliates granted the Trust a valid, perfected mortgage upon the Property, together with a security interest in and a lien upon all of the rents, incomes, and profits derived therefrom, and all fixtures and improvements thereon (collectively, the "Collateral"). The Holder, as the successor in interest to the Trust, holds all rights and remedies provided for in the Note and the Mortgage, and/or available to it under applicable state or federal law.

Upon information and belief, on or immediately before the Petition Date, the Affiliates conveyed legal title to the Property to the Debtor, which transfer was subject to the Mortgage. Upon further information and belief, and also as of the Petition Date, the Property was also subject to (a) a mortgage granted to Hingham Institution for Savings (the "Bank"), securing the repayment of $755,982, (b) a mortgage granted to Deborah F. Cestaro ("Cestaro"), securing the repayment of $355,009, and (c) accrued, unpaid real estate taxes.

### B. The Debtor's Filing and Proposed Postpetition Secured Financing

On the Petition Date, the Debtor filed a voluntary petition for relief pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtor has continued in the possession of its assets, and in the management of its business as a

debtor-in-possession, pursuant to Bankruptcy Code §§ 1107 and 1108.[2] On August 3, 2007, the Debtor filed the DIP Borrowing Motion, pursuant to which it sought authority, pursuant to Bankruptcy Code §§ 363 and 364, to obtain postpetition financing in the maximum amount of $2,375,000 (the "DIP Loan") from The Raymond C. Green Trust and Builders First Financial LLC (the "DIP Lenders"), to be secured by a first priority, postpetition priming lien on all of the Debtor's prepetition and postpetition assets, including the Collateral (the "DIP Lien").

On August 17, 2007, the Holder and the Trust filed the *Opposition of Merope Deluca to Debtor's Motion for Financing* (the "Holder Objection"), in which they challenged both the present value of the Property, and the adequacy of the protection afforded thereby, and further asserted that the Debtor had failed to establish that the Holder's interest in the Property could be adequately protected after being subordinated to the DIP Lien.[3] In addition, the Holder and the Trust filed the *Motion of Merope Deluca for Adequate Protection* (the "Adequate Protection Motion") in which they sought an order of the Court directing the payment of the monthly installments provided for in the Note. On August 20, 2007, Cestaro filed the *Objection by Secured Creditor, Deborah F. Cestaro, to Debtor's Motion for an Order Authorizing Post-Petition Financing on a First Priority Secured Basis* (the "Cestaro Objection," and together with the Holder Objection, the "Objections"), in which Cestaro raised the same objections to the DIP Borrowing Motion. Thereafter, the Court scheduled an evidentiary hearing on the DIP Borrowing Motion and the Objections.

---

[2] As of the date hereof, no official committee of unsecured creditors has been appointed in the Debtor's case, nor has any application been made for the appointment of either a Chapter 11 trustee or an examiner.

[3] In addition to valuation and adequate protection issues, the Holder also raised numerous other issues with respect to the representations made by the Affiliates in obtaining the advances made to then under the Note. While those issues are not addressed herein, to the extent they implicate claims against the Affiliates sounding in tort, or otherwise, the Holder expressly reserves any and all rights, remedies, claims, and causes of action that it holds as and against the Affiliates and their assets.

### C. The Evidentiary Hearing

On September 17, 2007, this Court presided over the first of a two-day evidentiary hearing, during which the Court took evidence in the form of affidavits and exhibits, and heard the cross-examinations of certain affiants. Specifically, on the issues germane to the Motion, the Court considered the affidavit of, and heard lay testimony from Betsy Hines ("Hines") (Transcript of Continued Evidentiary Hearing, September 24, 2007 ("September 24 Tr.") at 16:9-11), the real estate broker of the Debtor and a secured creditor of one of the Affiliates, (September 24 Tr. at 6:1-20; 7:25-9:1). Through her affidavit, Hines opined it would take twelve to eighteen months to sell the nineteen parcels comprising the Property, if developed. (*Affidavit of Betsy Hines, Realtor* ("Hines Aff.") at ¶ 9.) On cross-examination, however, Hines gave no support for her opinion, other than to state generally that other properties were overpriced, that being the sole reason, in her irrelevant lay opinion, why they were not selling. (September 24 Tr. at 25:10-21.)

On the other hand, the Holder's disinterested and qualified expert, James McCahill, a licensed real estate appraiser (the "Appraiser"), testified, based upon an independent analysis of the relevant market, that it would take over *three years* to sell the individual parcels comprising the Property at $250,000 per lot if development were completed. (September 24 Tr. at 165:25-167:19.) Based upon the Appraiser's expert opinion, and in view of the terms of the DIP Loan, the Holder prepared a detailed financing and sales feasibility analysis of the Debtor's proposed development and disposition of the Property were the DIP Loan to be approved, which analysis was submitted to the Court as Exhibit J to the *Affidavit of Thomas Belekewicz*. That unrefuted analysis, after giving the Debtor the benefit of the doubt as to its ability to sell each of the

nineteen parcels for a minimum of $250,000, clearly shows the Debtor's development and sales efforts fail on a cash flow basis long before the end of even Hines' optimistic sale period.

While the Debtor presented no evidence, by affidavit or otherwise, as to any specific applications made for, or denials of other credit before seeking relief pursuant to Bankruptcy Code § 364(d), or to the propriety of the terms being proposed, Duffee testified he made the decision to seek have the DIP Loan approved because it gave him and other equity participants at least a chance to "economically do better" than if the Property were simply sold as-is, without further development, to pay the existing secured debt. (Transcript of Evidentiary Hearing, September 17, 2007 ("September 17 Tr.") at 39:16-40:5; 41:10-23.) Moreover, while Hines purported to have spoken with unspecified parties interested in making offers for one or more of the parcels at the Property, the Debtor presented no evidence whatsoever as to the actual existence or interest of any prospective buyers, much less evidence of any specific offers.

At the conclusion of the evidentiary hearing on September 24, 2007, and without inviting further legal briefing based on the evidence, the Court took the matter under advisement. On September 26, 2007, the Court entered the DIP Borrowing Order, together with its *Memorandum of Decision* (the "Memorandum"), in which the Court specifically found that "the Property is subject to three secured claims: $755,982 by [the Bank]; $355,009 by [Cestaro]; and $1,230,031 by [the Holder]," which claims the Court found totaled $2,314,022. (Memorandum at Pg. 1.) The Court further found that the Property in its present undeveloped state has a value of $2,400,000, and, as result, that the Bank, Cestaro, and the Holder "are presently fully secured with an equity cushion of $85,978 before disposition costs." (Id. at Pg. 2.) The Court further found that as a result of the proposed postpetition borrowing, the secured claims against the Property would increase by $1,145,978, but projected that the value added to the Property from

the proposed improvements would be $2,350,000. On that basis, the Court found that the secured parties' equity cushion would improve to $1,289,960. In a footnote, the Court found the Debtor had also satisfied the conditions of Bankruptcy Code § 364(c) and (d) to obtain postpetition borrowings secured by a priming lien, *to wit*, that the trustee or debtor-in-possession first make an attempt to, but not succeed in obtain the same financing on an unsecured basis, or upon security of an equal or junior priority to senior prepetition lien holders. (Id. at Pg. 2, n.1.)

Based upon those findings, and its application of the law to those findings, the Court authorized and approved the DIP Loan over the Objections, pursuant to Bankruptcy Code § 364, in the maximum amount of $2,375,000, secured by the DIP Lien. In so doing, the Court found the Holder's interest in the Property would be adequately protected by the combination of (a) the projected increase in the equity cushion of the Property, (b) the $200,000 pay down from the proceeds of the DIP Loan, (c) a $100,000 interest reserve established for the Holder from the proceeds of the DIP Loan, and (d) payments to the Holder from the projected sale proceeds of some or all of the Collateral. The Holder now seeks a stay of the DIP Borrowing Order pending an appeal thereof to the District Court.

## *II. Argument*

### *A. Applicable Rule and Legal Standard*

Bankruptcy Rule 8005 states, in relevant part, that "[a] motion for a stay of . . . [an] order . . . of a bankruptcy judge, . . . or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance." Bankruptcy Rule 8005. Once such a request is made, "the bankruptcy judge may . . . make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest." Id. In this instance, and given the high probability a loss will be visited upon the Holder due to the subordination of its

Mortgage to the DIP Lien, this Court has the discretion, which it should exercise, to grant any of the specific prayers for relief herein.

The standard for granting a motion for a stay pending appeal is essentially the same as for issuing a preliminary injunction. See In re Convenience USA, Inc., 290 B.R. 558, 561 (Bankr. M.D.N.C. 2003); see also In re Great Barrington Fair and Amusement, Inc., 53 B.R. 237, 239 (Bankr. D. Mass. 1985). A party seeking a stay pending appeal must show: (1) it will likely prevail on the merits of the appeal; (2) it will suffer irreparable injury if the stay is denied; (3) other parties will not be substantially harmed by the stay; and (4) the public interest will be served by granting the stay. See Long v. Robinson, 432 F.2d 977, 979 (4th Cir. 1970); Culver v. Boozer, 285 B.R. 163, 166 (D. Md. 2002). In analyzing these factors, federal courts have developed (i) the "hardship balancing test" and (ii) the "likelihood of success test" with the essential difference being the order in which the factors are to be considered. See Convenience USA, 290 B.R at 561.

With respect to the hardship balancing test, the court begins by balancing the harm or injury imposed on the moving party in the event the relief is denied against the harm to other parties if the relief were to be granted. See id. at 561-62 (citing Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 811 (4th Cir. 1991)). Based on the result of the hardship balancing test, courts then proceed to determine the degree by which a "likelihood of success" on the merits must be established before relief may be granted. See id.; see also Manning v. Hunt, 119 F.3d 254, 263 (4th Cir. 1997) (citations omitted). If the balance of hardships tips decidedly toward the movant, then the movant need not show as strong a likelihood of success on the merits of its appeal. See id.; see also Direx, 952 F.2d at 813; The Commonwealth of Virginia Dep't of Med. Assistance Servs. v. Shenandoah Realty Partners L.P.

(In re Shenandoah Realty Partners, L.P.), 248 B.R. 505, 510 (W.D. Va. 1998); Cook Group, Inc. v. Wilson (In re Wilson), 233 B.R. 915, 917 (M.D.N.C. 1998).  In light of this standard, and as detailed herein, the Holder is easily able to satisfy the standard to obtain a stay of the DIP Borrowing Order pending an appeal thereof to the District Court.

### B. This Court Should Grant a Stay of the DIP Borrowing Order Pending an Appeal Because the Holder Will Likely Prevail on the Merits of Its Appeal

The Court should grant a stay of the DIP Borrowing Order because the Holder is likely to succeed in showing on appeal that this Court committed reversible error in issuing the DIP Borrowing Order, insofar as that order is predicated upon clearly erroneously findings of fact, and upon errors in the application of law.

Trustees and debtors-in-possession seeking approval of postpetition financing secured by a priming lien bear the burden of proving both the inability to obtain such postpetition credit otherwise, see In re Mosello, 195 B.R. 277, 287-88 (Bankr. S.D.N.Y. 1996); see also In re Stacy Farms, 78 B.R. 494, 497-98 (Bankr. S.D. Oh. 1987), and that the interests of the lien holders proposed to be primed are adequately protected.  See id.; Bankruptcy Code § 364(d)(2).  Courts should deny applications to approve such financing when the proposed adequate protection is based upon speculative assumptions and expectations that are not supported by the evidentiary record.  See Mosello, 195 B.R. at 292; see also In re Seth, 281 B.R. 150, 153-54 (Bankr. D. Conn. 2002); In the Matter of St. Petersburg Hotel Assoc., Ltd., 44 B.R. 944, 946 (Bankr. M.D. Fla. 1984).  Since the Holder is likely to prevail on its appeal because the finding of adequate protection is based on unsupported speculation, and since it will suffer irreparable harm by virtue of the DIP Lien in the interim, the Court should grant the relief requested herein.

### *i. The Finding That the Debtor Satisfied the Requirements of Bankruptcy Code § 364 Was Clearly Erroneous*

The Holder is likely to prevail on appeal because the Debtor presented no evidence of any efforts to obtain, or any denials of any requests for postpetition credit on terms better than those of the DIP Loan. See Stacy Farms, 78 B.R. at 498. Therefore, the Court's findings on that issue were clearly erroneous. The factual findings of a bankruptcy judge will be set aside on review when they are unsupported by the evidence, and thus so clearly erroneous that "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Intrex, Inc. v. Comm'r, 321 F.3d 55, 58 (1st Cir. 2003) (quoting Comm'r v. Duberstein, 363 U.S. 364, 395 (1960) (citations omitted)). Since the Debtor introduced no evidence of any pursuit of other lending more favorable than the DIP Loan, or the results thereof, this Court erred in finding the Debtor[4] sustained that burden of proof.

The application for the DIP Loan in the case *sub judice* is much like that before the Stacy Farms Court. 78 B.R. 494. There, the debtor sought postpetition financing pursuant to Bankruptcy Code § 364(d)(1) to purchase seed, fertilizer, and other goods needed to plant, and hopefully harvest crops from its farmlands. Id. at 498. The court there, however, denied the debtor's postpetition financing request because the only evidence before it with respect to Bankruptcy Code § 364(d)(1)(A) was its prepetition lender's refusal to provide working capital loans, and its counsel's general statement that bankruptcy lenders require priming liens. Id. On

---

[4] The Holder concedes testimony was adduced at the evidentiary hearing that certain *prepetition* borrowing efforts were made to refinance the development costs for the Property, and that those efforts were unsuccessful. The statutory language is clear, however, that loans such as the DIP Loan may not be approved unless "*the trustee [or debtor-in-possession] is unable to obtain such credit otherwise.*" Bankruptcy Code § 364(d)(1)(A); see Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000). Consequently, it is the Holder's position that the Debtor was obligated, as a debtor-in-possession, to renew those efforts postpetition before making application for the DIP Loan. Since no evidence exists that it did make such postpetition efforts, the Court's findings under Bankruptcy Code § 364(d)(1)(A) are unsupported by the evidence.

that record, the court denied the financing motion, finding the debtor failed to satisfy its initial burden of proof, without regard to the adequacy of the protection being offered. Id.

Like the Stacy Farms case, the only "evidence" before the Court that the Debtor sought and was denied postpetition financing on better terms than the DIP Loan are the statements of counsel made in the DIP Borrowing Motion. Duffee's affidavit makes no mention of seeking or being denied postpetition financing before filing the DIP Borrowing Motion, and during testimony he spoke only of four lenders he alleges to have approached since January 2007, but does not specify whether those requests were (a) postpetition, (b) for loans on better terms than the DIP Loan, or (c) denied. See Stacy Farms, 78 B.R. at 498; compare Mosello, 195 B.R. at 287; Seth, 281 B.R. at 152. Consequently, since the Court had no evidence before it on which to base its findings the Debtor had satisfied its burden of proof under Bankruptcy Code § 364(d)(1)(A), Intrex, Inc., 321 F.3d at 58, it entered the DIP Borrowing Order in error. Therefore, the Court should order a stay of the DIP Borrowing Order pending an appeal.

### ii. The Finding That the Holder's Interest in the Property is Adequately Protected Was Clearly Erroneous

The Holder is also likely to prevail on the merits of its appeal because the assumptions and expectations of the Debtor regarding the value and marketability of the Property after making the proposed improvements are highly speculative and unrealistic, and not otherwise grounded in a firm evidentiary basis. See Mosello, 195 B.R. at 292; see also Seth, 281 B.R. at 153-54; St. Petersburg Hotel, 44 B.R. at 946. Since those highly speculative projected values and timelines for sales of the Property substantially formed the basis for the Court's finding that

the Holder's interest in the Property would be adequately protected throughout, those findings are clearly erroneous and susceptible to reversal on appeal.[5]

As stated in the DIP Borrowing Order, the Court found the Property would have an improved value of $4.75 Million, resulting in a projected equity cushion of $1,289,960. While it did not expressly state so, the Court also implicitly found that the various parcels comprising the Property would actually be conveyed within a two-year time period, apparently crediting the unsubstantiated lay opinion of Hines on an issue of critical importance given the near-usury cost of the credit provided for under the DIP Loan. Since the DIP Borrowing Order only provides for the Holder to receive $200,000 from the DIP Loan proceeds (which is not enough to reduce the principal owed), and a nominal interest reserve (sufficient to pay less than eight months of interest), the Debtor's alleged ability to develop and sell the parcels comprising the Property is the very heart of the adequate protection, if any, of the Holder's interest. However, given that the only basis for the Court's adequate protection finding was the Debtor's unsubstantiated speculation, and the lay opinion of Hines, the Court erred in issuing the DIP Borrowing Order.

The analysis conducted by the bankruptcy court in the Mosello case, 195 B.R. 277, is both applicable and instructive in this case. There, the debtor, also a land developer, sought approval of postpetition financing pursuant to Bankruptcy Code § 364(d) to fund the development and construction of unimproved land. Mosello, 195 B.R. at 279-80. There, the Mosello Court, as did this Court, focused on the ability of the debtor to complete development of the property, and to sell the developed property for fair market value. Id. at 280. After a

---

[5] Since the Debtor failed to sustain its initial burden of proving an inability to obtain postpetition credit other than the DIP Loan, see Mosello, 195 B.R. at 287-88; see also Stacy Farms, 78 B.R. at 497-98, and since the DIP Borrowing Motion could have been denied on that basis alone, Stacy Farms, 78 B.R. at 498, the Holder asserts the Court did not need to reach the issue of whether the Holder's interests in the Debtor's property, if primed, would be adequately protected.

comprehensive review of the basis for the debtor's proposed development and sales plan, the court rejected, as an initial matter, the proposition that the improvement of property alone, in and of itself, without the addition of new collateral, can constitute adequate protection capable of justifying the grant of a priming lien. Mosello, 195 B.R. at 293 (citing In re Swedeland Dev. Group, Inc., 16 F.3d 552, 564 (3d Cir. 1994) (*en banc*)). Finding an absence of a factual foundation supporting the proposed basis of adequate protection, the court observed other courts generally denied requests such as that of Mosello, which are akin to forcing the secured lender into the shoes of an unwilling investor, without the concomitant upside benefits enjoyed by willing investors. Mosello, 195 B.R. at 293 (citing In re Chevy Devco, 78 B.R. 585 (Bankr. N.D. Cal. 1987)). On those bases, the Mosello Court denied the debtor's application for postpetition financing.

Like in Mosello, this Debtor has presented nothing more than speculative, unempirical, self-serving conjecture about its ability to develop and market the Property, which it openly admitted it is doing for the benefit of equity holders of the Debtor. (September 17 Tr. at 39:16-40:5; 41:10-23.) By the Debtor's own admission, and the Court's findings of the present value of the Property, the Holder is entitled to adequate protection of its oversecured interest in the Property, worth, as of September 26, 2007, $1,230,031. Now, however, with the luxury of wagering the property of others, the Debtor seeks to subordinate the interests of the Holder by an additional $1.75 Million, with the mere *expectation* that the Property will be worth in excess of $3.0 Million, *if*, and when fully developed. Mosello, 195 B.R. at 293. Since such speculative expectation, even if borne out, without more, cannot constitute a basis for a finding of adequate protection, Swedeland Dev. Group, Inc., 16 F.3d at 564, this Court's finding on that issue were

clearly erroneous, and likely to be reversed on appeal. Therefore, this Court should grant a stay of the DIP Borrowing Order.

### C. This Court Should Grant a Stay of the DIP Borrowing Order Pending an Appeal Because the Holder Will be Irreparably Harmed by the DIP Lien

The Court should grant a stay of the DIP Borrowing Order pending an appeal because the Holder will suffer irreparable harm if the advances proposed under the DIP Loan are made under the terms approved by the Court. As set forth above, the Court has determined that the Holder is presently oversecured, but it is poised to subordinate that interest by at least $1.75 Million in favor of the DIP Lenders. If the DIP Loan is made, and when the Debtor is proven wrong about its ability to repay the Holder from the Property, the Holder's only recourse against the Debtor will be pursuant to Bankruptcy Code § 507(b), a right with dubious value under the circumstances. Thus, at that day of reckoning, it will be too clear, too late that the Holder had presently valuable rights taken from it, for which it will have been given a deeply subordinated position behind a usury lender -- a far cry from the indubitable equivalent contemplated by Congress.

On balance, the harm to the Debtor, if any, is minimal. For example, the only representation made to the Court on timing of the funding is that road construction and paving activities must be completed prior to the ground freezing, (*Affidavit of David Walsh* ("Walsh Aff.") at ¶ 8), and that the construction of the proposed road will take approximately seventy-five days, (Walsh Aff. at ¶ 7). Additionally, Hines testified that those seeking to start construction on the Property, if anyone, would likely not begin until the spring of 2008. (September 24 Tr. at 21:22-22:6.) At no time has the Debtor asserted the road cannot be constructed simultaneously with homes thereon, or that the Property will deteriorate without the immediate construction of the road. See Seth, 281 B.R. 150, 152. Consequently, it is clear the real irreparable harm

suffered by the Holder if the DIP Loan is made substantially outweigh the speculative harm, if any, that would be suffered by the Debtor if is not.  Even if the Court is not persuaded, then, that the Holder is likely to succeed on the merits of its appeal, it should nevertheless grant a stay of the DIP Borrowing Order pending an appeal because the balance of hardships tips decidedly in favor of the Holder.  See Direx, 952 F.2d at 813; Shenandoah Realty Partners, 248 B.R. at 510; Wilson, 233 B.R. at 917.

### D. In the Alternative, the Court Should Grant a Brief Stay of the DIP Borrowing Order Pending the District Court's Determination of a Stay Thereof Pending an Appeal

As stated above, this Court is authorized to "make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest." Bankruptcy Rule 8005.  Given the high probability that a loss will be visited upon the Holder due to the extensive subordination of its Mortgage to the DIP Lien, even if the Court decides not to grant a stay of the DIP Borrowing Order pending an appeal, the Court should nonetheless grant a brief stay thereof to permit the Holder to seek a further stay of the DIP Borrowing Order, pending its appeal, on an emergency basis from the District Court.  Under the circumstances, such a temporary order is clearly necessary to protect the rights of the Holder and the value of its interest in the Property.

### III.  Conclusion

For the reasons stated herein, the Court should enter an immediate, temporary order staying the DIP Borrowing Order pending this Court's determination of this motion, and a further order staying the DIP Borrowing Order pending an appeal therefrom to the District Court. Even if the Court denies the relief requested herein, the Court should nevertheless grant a brief stay of the DIP Borrowing Order pending the emergency determination of the District Court of granting a stay thereof pending an appeal.

                INVESTMENT REALTY FUNDING, INC.

                By its attorneys,

                /s/ Michael J. Fencer
                _____
                Bruce F. Smith (BBO No. 467900)
                Steven C. Reingold (BBO No. 638649)
                Michael J. Fencer (BBO No. 648288)
                JAGER SMITH P.C.
                One Financial Center
                Boston, Massachusetts 02111
                telephone:  (617) 951-0500
                facsimile:  (617) 951-2414
                email:  mfencer@jagersmith.com

Dated:  October 2, 2007